## Bollinger's Champagne.

1. Under the Tariff Act of June 30, 1864, which lays a specific duty per gallon upon wines, and an *ad valorem* duty also, with a proviso that no *champagne* in bottles shall pay a *less* rate than $6 per dozen (quart) or two dozen (pint) bottles, the effect is that if the specific duty upon the gallon and the *ad valorem* duty *exceed* the sum of six dollars per dozen (quart) or two dozen (pint), the rate thus estimated will be the duty imposed. It is only when the rate falls *under* the sum of $6 that no less sum is chargeable.

2. Any entry of champagne wines knowingly made by means of false invoices, false certificates to the consul, or by means of any other false or fraudulent documents or papers, forfeits it, irrespective of the fact that if the entry had been truly made, the duty would have been no greater. The penalty is attached to the act of false entry, not to the result which such entry may, in the specific instance, produce on the revenue.

THE Revenue Act of March 3, 1863,* provides that every invoice of goods imported from a foreign country (when obtained otherwise than by purchase and subject to *ad valorem* duty) shall have indorsed upon it a declaration signed by the owner, agent, &c., setting forth that it contains "a *true*

---

* 12 Stat. at Large, 737.

and *full* statement of the actual market value thereof at the time when and the place where they were procured or manufactured;" and further, that if any such owner, agent, consignee, &c., of any goods, shall knowingly make, or attempt to make an entry thereof by means " of any invoice which shall not contain a *true* statement of all the particulars herein before required, or, by means of any other false or fraudulent document, or paper, or any other *false* or fraudulent practice, or appliance whatsoever, said goods, &c., *shall be forfeited,*" &c.

The Tariff Act of June 30, 1864,* lays the following duties:

" On wines of all kinds, valued at not over fifty cents per gallon, twenty cents per gallon and twenty-five per centum *ad valorem;* valued at over fifty cents, and not over one dollar per gallon, fifty cents per gallon, and twenty-five per centum *ad valorem;* valued *at over one dollar per gallon, one dollar per gallon, and twenty-five per centum ad valorem; provided,* that *no champagne,* or sparkling wines, in bottles, shall pay a *less* rate of duty than *six dollars per dozen bottles, each bottle containing not more than one quart,* and more than one pint, or six dollars per two dozen bottles, each bottle containing not more than one pint."

With these statutes in force, a libel for *undervaluation* was filed in the District Court for the Northern District of California against a quantity of champagne imported from France to the port of San Francisco, and entered at the customs there in November, 1864. On the trial evidence was given tending to prove that the wines in question were knowingly invoiced by their manufacturers at prices below the actual market value at the time when and place where they were manufactured; that he knowingly entered them at the customs on an invoice that did not state such actual market value; and that such actual market value was *forty-eight francs per case of twelve* (*quart*) *bottles.*

The court charged that under the act of June 30th, 1864, the undervaluation did not affect the amount or rate of

* 13 Stat. at Large, 202.

duties chargeable on the wines; that, if they had been invoiced and entered at their true and actual market value, they would still have been subject to a specific duty of but six dollars per dozen (quart) bottles, and, therefore, that the wines were not forfeited by reason of their having been knowingly entered on a false invoice.

The idea of the learned district judge, so far as the reporter could understand a case which came up on a very meagre record and was not argued here at all on one side, and by short brief only on the other, was this. The true, actual market value of the wine at the place of production was forty-eight francs or (estimating the franc at its customhouse valuation of 18 cents 6 mills) $8.92 for twelve quarts in bottles.*  This would make the wine worth $2.97 per gallon; on which the *ad valorem* duty (25 p. c. per gallon), would be:

| | | | | |
|---|---|---|---|---|
| For three gallons, or the whole twelve bottles, | . | . | . | 75 |
| Adding the specific duty ($1 per gallon), | . | . | . | 3 00 |
| Gave the entire duty, *independently of the proviso*, | | . | . | $3 75 |

But the importer had paid at any rate $6; and paid, therefore, just as much as he would have paid had he given in the true, actual market value of 48 francs per dozen quart bottles.

The claimant having had judgment, and this being approved by the Circuit Court, the case was now here on writ of error for review.

---

* I presume that in a question of customs duty the custom-house valuation of the franc was taken. It is a curious fact, however, shown by a note addressed to me in reply to an inquiry from me as to the matter, by the Hon. James Ross Snowden, ex-director of the Federal mint and well known to the country as one of its most learned numismatologists, that in the United States the franc has no less than three different values:

| | | | | | | | | c. | m. |
|---|---|---|---|---|---|---|---|---|---|
| 1. Custom-house valuation, | . | . | . | . | . | . | . | 18 | 6 |
| 2. Silver franc, mint price, | . | . | . | . | . | . | . | 19 | 6 |
| 3. Gold franc, full weight, | . | . | . | . | . | . | . | 19 | 27 |

The matter is perhaps of a sufficient interest, extraneous to the case, to induce my preservation of his note to me in an appendix. (See Appendix No. II.)—REP.

*Messrs. Speed, A. G., and Lake, D. A. for California, by brief, for the United States; no counsel appearing for the claimant.*

Mr. Justice NELSON delivered the opinion of the court.

It will be perceived that the duty imposed by the Tariff Act of June 30th, 1864, is both specific and *ad valorem;* and, according to the proviso, as it respects champagne or sparkling wines, in bottles, of a given quantity in each, not less than six dollars per dozen, or six dollars per two dozen, as may be the quantity, shall be imposed as the duty. The effect of the proviso is, that, if the specific duty upon the gallon, and the *ad valorem* duty on the appraised value, in the aggregate, as it respects the article of champagne or sparkling wines, as the case may be, in bottles, exceed the sum of six dollars per dozen, or two dozen, the rate thus estimated will be the duty imposed; but if the rate falls under the sum of six dollars, then, by virtue of the proviso, not less than that sum shall be exacted.

It will be observed that, in order to carry into effect this act, an appraisal at the customs, in the case of the specific duty on the gallon, is as essential as the appraisal in the case of an *ad valorem* duty. For the specific duty is apportioned according to the value of the article; wines valued at not over fifty cents per gallon, pay twenty cents per gallon; valued at over fifty and not over one dollar per gallon, fifty cents specific duty, and so on.

Now, the District Court charged in effect that, as the specific and *ad valorem* duty, in the aggregate, if properly appraised and estimated as appraised on the trial, was under six dollars per dozen, no higher duties would have been charged by the government than that sum; the sum which was paid on the entry to the collector.

The principle involved in the ruling is, that no matter how much fraud and imposition may have been practised upon the officers of the customs, or, however false may have been the invoice, or other papers of the shipment, and oath of the importer or agent upon which the entry of the goods is made, if it turns out in the result, that the value of duty required by law has been paid, no penalty attaches.

We cannot agree to this construction of the act of 1863, which prescribes this penalty, nor of the act of 1864 imposing the duty. The penalty of forfeiture is annexed to the act of making an entry knowingly by means of false invoices, or false certificate of the consul, or of any other invoice which contains an undervaluation, or by means of any other false or fraudulent documents or papers. No doubt one of the objects of the provision is to secure to the government the duties imposed by the statute, but another is, to protect the officers against imposition and fraud by the importer or agent, and to inculcate and enforce good faith and honest dealing with those officers while engaged in the execution of their duties.

Besides, under this provision of the act of 1864, the result which is assumed in the instruction to the jury, as the only material fact in disposing of the case, is one to be ascertained by the officers of the customs, and this, after the entry of the goods upon the invoice duly verified, and an appraisal and estimate of the amount of the duties. This is the way prescribed by the law to determine whether or not the duties in the aggregate fall under the rate of six dollars per dozen bottles. The reason, therefore, for integrity in all the documents and papers of the shipment, and fair dealing on the part of the importers or their agent, is as applicable to the present case as to any other importation and entry.

We think that the court below erred, and that the judgment should be

REVERSED.